Lorenzo E. Gasparetti (State Bar No. 135976)
Dorit M. Glockner (State Bar No. 229690)
Janet M. Lee (State Bar No. 251518)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: 213.457.8000
Facsimile: 213.457.8080
lgasparetti@reedsmith.com
dglockner@reedsmith.com
Attorneys for Defendant
MortgageIT, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SUSAN JETTE and BARBARA ANN JETTE, individuals,

Plaintiffs

vs.

ORANGE COUNTY FINANCIAL, INC., a corporation; MORTGAGEIT, INC., a corporation; INDYMAC BANCORP., INC., a corporation; TIEMPO ESCROW, INC., a corporation; JERRY INDES, an individual; MR. MINGUS, an individual; and DOES 1 through 10, inclusive,

Defendants

Case No. 08 CV-0616 DMS (LSP)

**DEFENDANT MORTGAGEIT, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: July 25, 2008
Time: 1:30 p.m.
Courtroom: 10

[filed concurrently with Notice of Motion and Motion to Dismiss and Notice of Motion and Motion for More Definite Statement; Memorandum of Points and Authorities in Support Thereof; and Notice of Party with Financial Interest]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

Pursuant to Federal Rule of Evidence 201, Defendant MortgageIT, Inc. ("MortgageIT") further requests that the Court take judicial notice of true and correct copies of the following legislative history for the Elder Abuse and Dependent Adult Civil Protection Act:

- **Exhibit A**: SB 1210, as amended Sept. 14, 1983 (excerpt);
- **Exhibit B**: AB 1805, as amended May 28, 1981 (excerpt);
- **Exhibit C**: AB 3988, as amended June 12, 1986 (excerpt); and
- **Exhibit D**: AB 1603, as amended September 4, 1985 (excerpt).

Federal Rule of Evidence 201(b) permits judicial notice of facts if they are "either (1) generally known within the territorial jurisdiction or the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Courts "routinely take judicial notice of legislative history . . ." *Paralyzed Veterans v. McPherson*, 2006 U.S. Dist. Lexis 89881, *12-*13 (N.D. Cal. Nov. 27, 2006).

DATED: June 11, 2008

REED SMITH LLP

By /s/ Dorit M. Glockner
Dorit M. Glockner
Attorneys for Defendant
MortgageIT, Inc

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

# EXHIBIT A

Case 3:07-cv-01642-JAH-POR Document 18-2 Filed 10/01/2007 Page 3 of 26

AMENDED IN ASSEMBLY SEPTEMBER 14, 1983
AMENDED IN ASSEMBLY AUGUST 30, 1983
AMENDED IN ASSEMBLY AUGUST 16, 1983
AMENDED IN SENATE JUNE 7, 1983
AMENDED IN SENATE MAY 2, 1983

# SENATE BILL No. 1210

Introduced by Senator Carpenter
(Coauthor: Assemblyman Elder)

March 4, 1983

An act to amend Sections 15610, 15620, 15621, and 15631 of, and to add Chapter 4.5 (commencing with Section 9380) to Division 8.5 of, the Welfare and Institutions Code, relating to elder abuse.

LEGISLATIVE COUNSEL'S DIGEST

SB 1210, as amended, Carpenter. Elder abuse.

Existing law contains provisions permitting persons to make reports of abuse or suspected abuse of dependent adults, which include elderly persons, to county adult protective services agencies on forms which shall be designed by the State Department of Social Services.

This bill would, with respect to elderly persons, as defined, instead provide that elder care custodians, medical practitioners, nonmedical practitioners, or any employee of an elder protective agency, as these terms are defined by the bill, who has actual knowledge that an elder whom he or she observes in his or her professional capacity, or within the scope of his or her employment, has been the victim of physical abuse shall report the suspected instances to elder protective agencies, as defined, immediately or as soon as possible by telephone and shall prepare and send a written

report thereof within 36 hours.

The bill would allow, but not require, all other persons to report instances of elder abuse, as defined, to elder protective agencies.

Elder care custodians, medical practitioners, nonmedical practitioners, or employees of an elder protective agency would also be ~~required~~ *permitted* to~~,~~ report instances of mental abuse.

The bill would provide that elder protective services shall not be provided by an elder protective agency without the consent of the elder abuse victim, except that temporary guardianship or conservatorship appointments may be sought if the victim is found to be so incapacitated as to not have the ability to give or deny consent.

The bill would require each county to ~~annually~~ report to the State Department of Social Services ~~and the Legislature~~ on the number of elder abuse reports received ~~by any local agency within the county's jurisdiction~~.

The bill would provide that elder abuse agencies shall establish procedures for the sharing of information and the coordination of investigations relating to instances of suspected elder abuse.

The bill would specify informational requirements for reports of instances of elder abuse.

The bill would specify that in any court proceeding or administrative hearing, neither the physician-patient privilege nor the psychotherapist-patient privilege would apply to specific elder abuse information required to be reported by the bill.

Existing law specifies that no civil or criminal liability shall arise from failure to file a report concerning instances of abuse or suspected abuse to dependent adults.

The bill would, with respect to elderly persons, provide that no person required to make a report shall bear civil or criminal liability for reporting suspected elder abuse, and that no other person shall bear any liability for reporting these instances unless the person knew, or should have known, that the report was false.

The bill would provide that any person knowingly failing to report, when required, an instance of elder abuse is guilty of

a misdemeanor punishable by a fine not to exceed $1,000.

*The bill would provide that county adult protection services agencies shall not be responsible for any increase in adult protective services resulting from the provisions of this bill, except to the extent that existing state and federal funds are available for these services.*

This bill would, by creating a crime and by imposing additional duties upon elder protective agencies, create a state-mandated local program.

Article XIII B of the California Constitution and Sections 2231 and 2234 of the Revenue and Taxation Code require the state to reimburse local agencies and school districts for certain costs mandated by the state. Other provisions require the Department of Finance to review statutes disclaiming these costs and provide, in certain cases, for making claims to the State Board of Control for reimbursement.

However, this bill would provide that no appropriation is made and no reimbursement is required by this act for a specified reason.

This bill would provide that notwithstanding Section 2231.5 of the Revenue and Taxation Code, this act does not contain a repealer, as required by that section; therefore, the provisions of the act would remain in effect unless and until they are amended or repealed by a later enacted act.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

SECTION 1. It is the intent of the Legislature in enacting the provisions of this act to establish a mechanism to document the extent and type of elder abuse through reporting and evaluating instances of suspected elder abuse, in order to ascertain the need for planning and development of programs for provision of services to victims of elder abuse. *County adult protection services agencies shall not be responsible for any increase in adult protective services resulting from the provisions of this act, except to the extent that existing state and federal funds are available for these*

*services.*

SEC. 2. Chapter 4.5 (commencing with Section 9380) is added to Division 8.5 of the Welfare and Institutions Code, to read:

CHAPTER 4.5. ELDER ABUSE REPORTING

9380. As used in this chapter:

(a) "Elder" means a person 65 years of age or older.

(b) "Elder abuse" means any one or more of the following acts which are inflicted by other than accidental means on an elder by another person: physical abuse, fiduciary abuse, neglect, or abandonment.

(c) "Physical abuse" means a situation where any person who has the care or custody of, or who stands in a position of trust with, an elder, willfully inflicts upon that elder any cruel or inhuman corporal punishment or injury. Physical abuse includes, but is not limited to, direct beatings, sexual assault, unreasonable physical constraint, or prolonged deprivation of food or water.

(d) "Fiduciary abuse" means a situation where any person who stands in a position of trust with respect to an elder, willfully steals the money or property of that elder, or secretes or appropriates the money or property of that elder, to any use or purpose not in the due and lawful execution of his or her trust.

(e) "Neglect" means the negligent failure of any person having the care or custody of an elder to exercise that degree of care which a reasonable person in a like position would exercise. Neglect includes, but is not limited to:

(1) Failure to assist in personal hygiene, or in the provision of food, and clothing for an elder.

(2) Failure to provide the medical care for the physical and mental health needs of an elder. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.

(3) Failure to protect an elder from health and safety hazards.

(4) Failure to prevent an elder from suffering malnutrition.

(f) "Abandonment" means the desertion or willful forsaking of an elder person by any person having the care or custody of that elder under circumstances in which a reasonable person would continue to provide care or custody.

(g) "Elder care custodian" means an administrator of a community care facility licensed to care for the elderly, a public assistance worker, a probation officer, a social worker, a licensed home aide, or an employee of an elder care institution, including personnel of residential care facilities, skilled nursing facilities, and intermediate care facilities.

(h) "Medical practitioner" means a physician and surgeon, psychiatrist, psychologist, dentist, osteopath, podiatrist, chiropractor, resident, intern, nurse, pharmacist, or any other person who is currently licensed under Division 2 (commencing with Section 500) of the Business and Professions Code.

(i) "Nonmedical practitioner" means a state or county public health employee who treats an elder for any condition, a paramedic, a coroner, a geriatric or family counselor, or a lawyer.

(j) "Elder protective agency" means the State Department of Social Services, a county probation department, a county welfare department, a police or sheriff's department, or a nursing home ombudsman.

9381. (a) Any elder care custodian, medical practitioner, nonmedical practitioner, or employee of an elder protective agency who has actual knowledge that an elder whom he or she observes in his or her professional capacity or within the scope of his or her employment has been the victim of physical abuse shall report the suspected instance of physical abuse to an elder protective agency immediately or as soon as possible by telephone and shall prepare and send a written report thereof within 36 hours.

(b) Any person who has knowledge of or observes an elder whom he or she reasonably suspects has been a

designate a voluntary or private nonprofit community agency to receive reports filed pursuant to this article *and pursuant to Chapter 4.5 (commencing with Section 9380) of Division 8.5.*

Each county adult protective agency or designated contract agency shall maintain an inventory of all public and private service agencies available to assist victims of abuse as defined by Sections 9380 and 15610. This inventory shall be used to refer victims in the event that the county adult protective services agency cannot resolve the immediate needs of the victim, and to serve the victim on a long-term, followup basis. The intent of this section is to acknowledge that limited funds are available to resolve all suspected cases of abuse reported to a county adult protective services agency. Counties are encouraged to establish a formal agreement with the local nursing home ombudsman programs to help resolve suspected cases of abuse occurring in an institutional setting.

SEC. 7. No appropriation is made and no reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution or Section 2231 or 2234 of the Revenue and Taxation Code because the only costs which may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, changes the definition of a crime or infraction, changes the penalty for a crime or infraction, or eliminates a crime or infraction.

SEC. 8. Notwithstanding Section 2231.5 of the Revenue and Taxation Code, this act does not contain a repealer, as required by that section; therefore, the provisions of this act shall remain in effect unless and until they are amended or repealed by a later enacted act.

O

# EXHIBIT B

AMENDED IN ASSEMBLY MAY 28, 1981

CALIFORNIA LEGISLATURE—1981–82 REGULAR SESSION

# ASSEMBLY BILL No. 1805

Introduced by Assemblyman Felando

March 27, 1981

An act to ~~add and repeal Section 10821~~ *to amend Section 11161.8 of the Penal Code and to add Chapter 11 (commencing with Section 15600) to Part 3 of Division 9 of* the Welfare and Institutions Code, relating to ~~elder abuse~~ *abuse of dependent adults.*

LEGISLATIVE COUNSEL'S DIGEST

AB 1805, as amended, Felando. Elder abuse data.

~~Existing law provides for the establishment for a central delivery system by the State Department of Social Services, one of the tasks of which shall be to collect data for use by the department and counties in the administration of public social services programs.~~

~~This bill would require county adult protective agencies to submit data on the age of victims of abuse for collection in the central delivery system, upon the implementation date of that system in each county.~~

*Existing law does not provide for a system of reporting and gathering data concerning abuse to dependent adults.*

*This bill would provide that, upon implementation of the Central Delivery System by the State Department of Social Services, counties shall be required by the department to supply data through the Central Delivery System on cases of reported abuse to dependent adults.*

*The bill would also provide that the Adult Protective Services Division in the State Department of Social Services shall submit a report to the Legislature and the Governor on*

*abuse of dependent adults, with the report to cover specified areas of injury. The study upon which the report would be based would commence on January 1 of the year following the implementation of the Central Delivery System, with the report to be submitted no later than one year after the commencement of the study.*

*The bill would also require specified individuals to report suspected cases of abuse, neglect, monetary exploitation, or abandonment of dependent adults to county adult protective services agencies.*

*The bill contains provisions limiting civil and criminal liability of persons reporting cases of suspected abuse.*

*Article XIII B of the California Constitution and Sections 2231 and 2234 of the Revenue and Taxation Code require the state to reimburse local agencies and school districts for certain costs mandated by the state. Other provisions require the Department of Finance to review statutes disclaiming these costs and provide, in certain cases, for making claims to the State Board of Control for reimbursement.*

*However, certain provisions of this bill would provide that no appropriation is made and no reimbursement is required by this act for a specified reason.*

Article XIII B of the California Constitution and Sections 2231 and 2234 of the Revenue and Taxation Code require the state to reimburse local agencies and school districts for certain costs mandated by the state. Other provisions require the Department of Finance to review statutes disclaiming these costs and provide, in certain cases, for making claims to the State Board of Control for reimbursement.

~~This~~ *Certain provisions of this* bill would provide that no appropriation is made by this act for the purpose of making reimbursement pursuant to the constitutional mandate or Section 2231 or 2234, but would recognize that local agencies and school districts may pursue their other available remedies to seek reimbursement for these costs.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

~~SECTION 1. Section 10821 is added to the Welfare and Institutions Code, to read:~~

~~10821. The department shall require, upon the implementation date of the central delivery system in each county, county adult protective agencies to submit data on the age of victims of abuse to the department. Data shall be collected in the central delivery system. This section shall only be in effect until January 1, 1988, and as of such date is repealed, unless a later enacted statute chaptered before January 1, 1988, deletes or extends that date.~~

*SECTION 1. Section 11161.8 of the Penal Code is amended to read:*

11161.8. Every person, firm, or corporation ~~conducting~~ *operating* any hospital in the state, or the managing agent thereof, or the person managing or in charge of such hospital, or in charge of any ward or part of such hospital, who receives a patient transferred from a health facility, as defined in Section 1250 of the Health and Safety Code or from a community care facility, as defined in Section 1502 of the Health and Safety Code, who exhibits a physical injury or condition which, in the opinion of the admitting physician, reasonably appears to be the result of neglect ~~or~~ , abuse, *monetary exploitation, or abandonment,* shall report such fact by telephone and in writing, within 36 hours, to both the local police authority having jurisdiction and the county health department.

*The county health department is to inform the county adult protective services within the week of the incidence of neglect, abuse, monetary exploitation, or abandonment.*

Any registered nurse, licensed vocational nurse, or licensed clinical social worker employed at such hospital may also make a report under this section, if, in the opinion of such person, ~~a~~ *any* patient exhibits a physical injury or condition which reasonably appears to be the result of neglect ~~or~~ , abuse , *monetary exploitation, or*

*abandonment.*

Every physician and surgeon who has under his charge or care any such patient who exhibits a physical injury or condition which reasonably appears to be the result of neglect ~~or,~~ abuse, *monetary exploitation, or abandonment* shall make such report.

*Every attorney who has occasion to draw up property transfer conservatorship or guardianship papers and who suspects the caretaker to be engaged in a form of monetary exploitation shall make such a report.*

The report shall state the character and extent of the physical injury or condition.

No employee shall be discharged, suspended, disciplined, or harassed for making a report pursuant to this section.

No person shall incur any civil or criminal liability as a result of making any report authorized by this section.

*SEC. 2. Chapter 11 (commencing with Section 15600) is added to Part 3 of Division 9 of the Welfare and Institutions Code, to read:*

*CHAPTER 11. ABUSE TO THE ELDERLY AND OTHER DEPENDENT ADULTS*

*Article 1. Legislative Findings and Intent*

*15600. The Legislature recognizes that dependent adults may be subjected to abuse, neglect, monetary exploitation, or abandonment and that this state has a responsibility to protect such persons.*

*The Legislature further recognizes that a significant number of these persons are elderly and that the aging of America is one of the most significant demographic trends in this century. It is also recognized that persons over the age of 75 have a higher incidence of functional disabilities. Therefore, the Legislature desires to direct special attention to the needs and problems of the elderly, recognizing that these persons constitute a significant and identifiable segment of the population and that they are more subject to risks of abuse, neglect,*

*monetary exploitation, and abandonment.*

*The Legislature declares that if this state is to foster and promote community services for the economic, social, and personal well-being of its citizens, it must take steps designed to protect those persons described in this section.*

*15601. The purpose of this act is to provide the legal authority for a statewide mandatory reporting mechanism which would develop data in the following areas:*

*(a) Demographic information, including age, concerning the types of abuse, neglect, monetary exploitation, or abandonment applicable to this state.*

*(b) Identification of the needs of those persons described in Section 15600 that are not currently being met.*

*Article 2. Definitions*

*15610. For purposes of this chapter:*

*(1) The term "abuse" means the infliction of injury, intimidation, cruel punishment, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a caretaker of goods or services which are necessary to avoid physical harm or mental suffering.*

*(2) The term "neglect" means the failure to provide for oneself the goods or services which are necessary to avoid physical harm or mental suffering or the failure of a caretaker to provide such goods or services.*

*(3) The term "exploitation" means the illegal or improper act or process of a caretaker using the resources of a dependent adult for monetary or personal benefit, profit, or gain.*

*(4) The term "abandonment" refers to the desertion or willful foresaking of a dependent adult by a caretaker, or the foregoing withdrawal or neglect of duties and obligations owed a dependent adult by a caretaker or other person.*

*(5) The term "physical harm" means bodily pain, injury, impairment, or disease.*

(6) The term "mental suffering" means an acute psychological state of fear, agitation, confusion, depression, or other serious emotional distress.

(7) The term "dependent adult" means any person residing in California who has attained the age of 18 years or older who has physical, mental, or financial limitations which restrict his or her individual ability to carry out normal activities of daily living, ability to protect his or her own rights, and which threaten the individual's capacity to live an independent life.

(8) The term "goods or services which are necessary to avoid physical harm or mental suffering" includes but is not limited to: (a) the provision of medical care for physical and mental health needs, (b) assistance in personal hygiene, (c) possessing adequate clothing, (d) adequately heated and ventilated shelter, (e) protection from health and safety hazards, (f) protection from malnutrition, under those circumstances where the results include but are not limited to, malnutrition and deprivation of necessities or physical punishment, and (g) transportation and assistance necessary to secure any of the above-stated needs. No person, except for those for whom a conservatorship has been established pursuant to Division 4 (commencing with Section 1400) of the Probate Code on or after January 1, 1981, or those adjudicated as incompetent pursuant to former Sections 1450 to 1472, inclusive, or Section 1751 of the Probate Code or Sections 5350 to 5371, inclusive of this code, shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.

(9) The term "health facility" means any facility defined in Section 1250 of the Health and Safety Code.

(10) The term "community care facility" means any facility defined in Section 1502 of the Health and Safety Code.

(11) The term "clinic" means any facility defined in Section 1204 of the Health and Safety Code.

(12) The term "home health agency" means an organized program, hospital, or community-based

*organization, for the provision of a spectrum of medical services, equipment, and supplies to patients in their homes.*

*(13) The term "long-term care" means an organized system of a variety of formal and informal services to assist the dependent adult, as well as their family to achieve and maintain optimum well-being.*

*(14) The term "community care" means any services offered in the community for the general welfare of elderly and dependent adults, including but not limited to, social services, nutrition and volunteer services, information and referral services, housing and housing referral services, transportation services, legal services, homemaker services, and counseling services.*

*(15) The term "nursing home ombudsman" means the long-term care ombudsman of the Department of Aging, the ombudsman coordinators of that department, and the persons acting in the capacity of regional ombudsman on behalf of approved organizations as described in Chapter 9 (commencing with Section 9700) of Division 8.5.*

*(16) The term "patients' rights advocate" means the designated person for psychiatric patients and those with developmental disabilities as implemented under Section 863.1 of Title 9 of the Administrative Code.*

*(17) The term "ambulatory care" means those facilities designated as ambulatory care centers whether community based or attached to an acute care facility.*

*(18) The term "life threatening" means an incident where physical harm is such that the victim's life is in imminent danger.*

*Article 3. Data Base Method of Reporting Requirements*

*15620. The Adult Protective Services Division in the State Department of Social Services shall submit a report to the Legislature and Governor on the characteristics of abuse victims. The State Department of Social Services shall submit a draft of the report to the Department of*

# BLANK PAGE

Artifact of Photocopy Reproduction

JAN RAYMOND
LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
1 (888) 676-1947

# EXHIBIT C

AMENDED IN SENATE JUNE 12, 1986

AMENDED IN ASSEMBLY APRIL 8, 1986

CALIFORNIA LEGISLATURE—1985–86 REGULAR SESSION

# ASSEMBLY BILL No. 3988

Introduced by Assembly Member Papan
~~(Coauthor: Assembly Member Hayden)~~
*(Coauthors: Assembly Members Hayden, Agnos, Bates, Duffy, and Margolin)*
*(Senate coauthors: Senators Carpenter and Mello)*

February 21, 1986

An act to amend *Section 972 of the Evidence Code, to amend Section 368 of the Penal Code, and to amend* Sections 15600, 15601, 15610, 15620, 15621, 15630, 15631, 15632, 15633, 15633.5, 15634, 15635, 15640, and the heading of Chapter 11 (commencing with Section 15600) of Part 3 of Division 9 of, to add Section 15650 to, to repeal ~~Section 15602~~ *Sections 15602 and 15621* of, and to repeal Chapter 4.5 (commencing with Section 9380) of Division 8.5 of, the Welfare and Institutions Code, relating to ~~public social services~~ *the abuse of adults, and declaring the urgency thereof, to take effect immediately.*

LEGISLATIVE COUNSEL'S DIGEST

AB 3988, as amended, Papan. Elder and dependent adult abuse.

*Existing law provides a married person a privilege not to testify against his or her spouse in any proceeding and a privilege not to disclose a confidential communication while the person and his or her spouse were married, with certain exceptions, including a criminal proceeding in which one spouse is charged with a crime against the person or property of the other spouse or of a child of either.*

*This bill would make the privilege inapplicable in criminal*

*proceedings in which one spouse is charged with a crime against the person or property of the other spouse or of a child, parent, relative, or cohabitant of either.*

*Existing law specified that it is a crime to inflict unjustifiable physical pain or mental suffering on a dependent adult, as defined, or for a person having the custody and control of a dependent adult to thieve or to embezzle the property of that dependent adult.*

*This bill would impose a state-mandated local program by revising the definition of dependent adult, thereby changing the definition of a crime.*

Existing law contains provisions requiring certain care custodians, medical practitioners, and employees of elder protective agencies who have knowledge of abuse of elders to report suspected incidents of abuse to an elder protective agency, and contains, until January 1, 1990, similar provisions for reporting suspected incidents of abuse of dependent adults to county adult protective services agency or a local law enforcement agency.

This bill would repeal specified provisions relating to elder abuse reporting and revise the dependent adult program by deleting the language mandating its repeal on January 1, 1990, and by establishing a combined program establishing reporting requirements for both elders, as defined, and dependent adults, and would make technical changes to conform to the combined program.

The bill would impose a state-mandated local program by imposing, on a permanent basis, misdemeanor penalties upon any person who fails to report an instance of dependent adult abuse and by deleting the repeal of dependent adult abuse provisions, and by imposing those reporting requirements on the local public conservator and public guardian.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement, including the creation of a State Mandates Claims Fund to pay the costs of mandates which do not exceed $500,000 statewide and other procedures for claims whose statewide costs exceed $500,000.

This bill would provide that reimbursement for costs

mandated by the bill shall be made pursuant to those statutory procedures and, if the statewide cost does not exceed $500,000, shall be payable from the State Mandates Claims Fund.

*This bill would declare that it is to take effect immediately as an urgency statute.*

Vote: ~~majority~~ ⅔. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

SECTION 1. *Section 972 of the Evidence Code is amended to read:*

972. A married person does not have a privilege under this article in:

(a) A proceeding brought by or on behalf of one spouse against the other spouse.

(b) A proceeding to commit or otherwise place his or her spouse or his or her spouse's property, or both, under the control of another because of the spouse's alleged mental or physical condition.

(c) A proceeding brought by or on behalf of a spouse to establish his or her competence.

(d) A proceeding under the Juvenile Court Law, Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code.

(e) A criminal proceeding in which one spouse is charged with:

(1) A crime against the person or property of the other spouse or of a child, *parent, relative, or cohabitant* of either, whether committed before or during marriage.

(2) A crime against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse, whether committed before or during marriage.

(3) Bigamy.

(4) A crime defined by Section 270 or 270a of the Penal Code.

(f) A proceeding resulting from a criminal act which occurred prior to legal marriage of the spouses to each

Section 15630, or from any other source having reasonable cause to know that the welfare of an elder or dependent adult is endangered, and shall take such actions as are considered necessary to protect the elder or dependent adult and correct the situation and ensure the individual's safety.

SEC. 4. Section 15601 of the Welfare and Institutions Code is amended to read:

15601. The purposes of this act are to:

(a) Encourage health care providers, social service workers, and community members in general to report suspected cases of abuse of elders and dependent adults.

(b) Collect information on the numbers of abuse victims, circumstances surrounding the act of abuse, and other data which will aid the state in establishing adequate services to aid all victims of abuse in a timely, compassionate manner.

(c) Provide for protection under the law for all those persons who report suspected cases of abuse, provided that the report is not made with malicious intent.

SEC. 5. Section 15602 of the Welfare and Institutions Code is repealed.

SEC. 6. Section 15610 of the Welfare and Institutions Code is amended to read:

15610. As used in this chapter:

(a) "Elder" means any person residing in this state, 65 years of age or older.

(b) *(1)* "Dependent adult" means any person residing in this state, between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age.

*(2) "Dependent adult" includes any person between the ages of 18 and 64 who is admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code.*

(c) "Physical abuse" means assault and battery, which means all of the following:

(1) Assault, as defined in Section 240 of the Penal Code.

(2) Battery, as defined in Section 242 of the Penal Code.

(3) Assault with a deadly weapon or force likely to produce great bodily injury, as defined by Section 245 of the Penal Code.

(4) Unreasonable physical constraint, or prolonged or continual deprivation of food or water.

(5) Sexual assault, which means any of the following:

(A) Sexual battery, as defined in Section 243.4 of the Penal Code.

(B) Rape, as defined in Section 261 of the Penal Code.

(C) Rape in concert, as described in Section 264.1 of the Penal Code.

(D) Incest, as defined in Section 285 of the Penal Code.

(E) Sodomy, as defined in Section 286 of the Penal Code.

(F) Oral copulation, as defined in Section 288a of the Penal Code.

(G) Penetration of a genital or anal opening by a foreign object, as defined in Section 289 of the Penal Code.

(d) *(1)* "Neglect" means the negligent failure of any person having the care or custody of *an elder or a* dependent adult to exercise that degree of care which a reasonable person in a like position would exercise. Neglect includes, but is not limited to all of the following:

~~(1)~~

*(A)* Failure to assist in personal hygiene, or in the provision of food ~~or clothing~~*, clothing, or shelter*.

~~(2)~~

*(B)* Failure to provide medical care for physical and mental health needs. ~~No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.~~

~~(3)~~

*(C)* Failure to protect from health and safety hazards.

~~(4)~~

*(D)* Failure to prevent malnutrition.

*(2) No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.*

(e) "Abandonment" means the desertion or willful foresaking of *an elder or* a dependent adult by anyone having care or custody of that person under circumstances in which a reasonable person would continue to provide care and custody.

(f) "Fiduciary abuse" means a situation in which any person who has the care or custody of, or who stands in a position of trust to, *an elder or* a dependent adult, takes, secretes, or appropriates their money or property, to any use or purpose not in the due and lawful execution of his or her trust.

(g) "Abuse of an elder or a dependent adult" means physical abuse, neglect, intimidation, cruel punishment, fiduciary abuse, abandonment, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a care custodian of goods or services which are necessary to avoid physical harm or mental suffering.

(h) "Care custodian" means an administrator or an employee, except persons who do not work directly with elders or dependent adults as part of their official duties, including members of support staff and maintenance staff, of any of the following public or private facilities *when the facilities provide care for elders or dependent adults*:

(1) Twenty-four-hour health facilities, as defined in ~~Section 1250~~ *Sections 1250, 1250.2, and 1250.3* of the Health and Safety Code.

(2) Clinics.

(3) Home health agencies

(4) Adult day health care centers.

(5) Secondary schools which serve 18-to 22-year-old dependent adults and postsecondary educational institutions which serve dependent adults or elders.

(6) Sheltered workshops.

(7) Camps.

(8) Community care facilities, as defined by Section 1502 of the Health and Safety Code *and residential care facilities for the elderly, as defined in Section 1569.2 of the Health and Safety Code*.

(9) Respite care facilities.

(10) Foster homes.

(11) Regional centers for persons with developmental disabilities.

(12) State Department of Social Services and State Department of Health Services licensing divisions.

(13) County welfare departments.

(14) Offices of patients' rights advocates.

(15) ~~Offices~~ *Office* of the long-term care ombudsman.

(16) Offices of public conservators and public guardians.

(17) Any other ~~agency which provides goods or services necessary to avoid physical harm or mental suffering.~~ *protective agency which provides health services or social services to elders or dependent adults.*

(i) "Health practitioner" means a physician and surgeon, psychiatrist, psychologist, dentist, resident, intern, podiatrist, chiropractor, licensed nurse, dental hygienist, licensed clinical social worker, marriage, family, and child counselor, or any other person who is currently licensed under Division 2 (commencing with Section 500) of the Business and Professions Code, any emergency medical technician I or II, paramedic, a person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code, a psychological assistant registered pursuant to Section 2913 of the Business and Professions Code, a marriage, family and child counselor trainee, as defined in subdivision (c) of Section 4980.03 of the Business and Professions Code, or an unlicensed marriage, family and child counselor intern registered under Section 4980.44 of the Business and Professions Code, state or county public health or social service employee who treats an elder or a dependent adult for any condition, a coroner, or a

BLANK PAGE

Artifact of Photocopy Reproduction

JAN RAYMOND
LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
1 (888) 676-1947

# DEFENDANT MORTGAGEIT, INC.'S REQUEST FOR JUDICIAL NOTICE

(IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT)

## PART 3 OF 3

# EXHIBIT D

AMENDED IN SENATE SEPTEMBER 4, 1985
AMENDED IN ASSEMBLY JUNE 25, 1985
AMENDED IN ASSEMBLY JUNE 12, 1985
AMENDED IN ASSEMBLY MAY 28, 1985
AMENDED IN ASSEMBLY MAY 14, 1985
AMENDED IN ASSEMBLY MAY 7, 1985
AMENDED IN ASSEMBLY APRIL 15, 1985

CALIFORNIA LEGISLATURE—1985–86 REGULAR SESSION

# ASSEMBLY BILL No. 1603

Introduced by Assembly Member Agnos

March 6, 1985

An act to amend Sections 9380, ~~15600, 15602 and 15610~~ *9383, 15600, and 15602 of, and to amend, repeal, and add Section 15630* of, to add Section 9387 to, *to repeal and add Section 15610 of,* and to add Article 5 (commencing with Section 15640) to Chapter 11 of Part 3 of Division 9 of, the Welfare and Institutions Code, relating to dependent adult and elder abuse.

LEGISLATIVE COUNSEL'S DIGEST

AB 1603, as amended, Agnos. Dependent adult and elder abuse.

Existing law contains various provisions relating to abuse of dependent adults, as defined. These provisions would be repealed on January 1, 1986.

This bill would instead provide that these provisions would be repealed on January 1, 1990.

Under existing law, any person witnessing or suspecting that a dependent adult is being or has been subject to abuse

may report suspected cases to the county adult protective services agency.

Existing law also requires specified individuals to submit reports of suspected elder abuse to county adult protective services agencies under certain circumstances, and permits all other individuals to file these reports.

*The bill would modify existing provisions relating to the submission of reports to county adult protective services agencies of elder or dependent adult abuse, with certain of these modifications to be operative only if AB 238 is enacted during the 1985 portion of the 1985–86 Regular Session.*

The bill would require the State Department of Social Services, in cooperation with representatives of county government, and in consultation with specified entities to establish minimum guidelines for a county adult protective service agency to determine when an investigation of an allegation of elder or dependent adult abuse is warranted.

The bill would also require the Department of Justice, in consultation with specified entities, to develop uniform guidelines for local law enforcement assistance with investigations of allegations of elder or dependent adult abuse conducted by county adult protective service agencies.

The State Department of Social Services and the Department of Justice would be required to report to the Joint Legislative Budget Committee by January 1, 1988, on the fiscal and programmatic impact of the guidelines developed by the respective agencies.

Since the bill extends provisions permitting individuals to report to each county on dependent adult abuse, the bill would create a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement, including the creation of a State Mandates Claims Fund to pay the costs of mandates which do not exceed $500,000 statewide and other procedures for claims whose statewide costs exceed $500,000.

This bill would provide that reimbursement for costs mandated by the bill shall be made pursuant to those statutory procedures and, if the statewide cost does not exceed

$500,000, shall be payable from the State Mandates Claims Fund.

~~This bill would provide that, notwithstanding Section 2231.5 of the Revenue and Taxation Code, this bill does not contain a repealer, as required by that section; therefore, the provisions of the bill would remain in effect unless and until they are amended or repealed by a later enacted bill.~~

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

SECTION 1. Section 9380 of the Welfare and Institutions Code is amended to read:

9380. The Legislature finds and declares all of the following:

(a) Elders may be subjected to abuse, neglect, or abandonment, and that this state has a responsibility to protect these persons.

(b) Special attention should be directed to the needs and problems of the elderly, recognizing that these persons constitute a significant and identifiable segment of the population and that they are more subject to risks of abuse, neglect, and abandonment.

(c) Most elders who are at the greatest risk of abuse, neglect, and abandonment by their family or caretakers suffer physical impairments and other poor health that place them in a dependent and vulnerable position.

(d) Factors which contribute to abuse, neglect, and abandonment of elders are economic instability of the family, resentment of caretaker responsibilities, stress on the caretaker, and abuse by the caretaker of drugs or alcohol.

(e) This state shall foster and promote community services for the economic, social, and personal well-being of its citizens, in order to protect those persons described in this section.

(f) Uniform state guidelines which specify when county adult protective service agencies are to investigate allegations of abuse to elders and the

appropriate role of local law enforcement do not currently exist and the implementation of these guidelines is necessary in order to ensure that a minimum level of protection is provided to elders in each county.

Therefore, it is the intent of the Legislature in enacting this chapter to provide, in those instances where a county has designated an elder abuse reporting agency, that that agency shall receive referrals or complaints from public or private agencies, from any mandated reporter submitting reports pursuant to Section 9381, or from any other source having reasonable cause to know that the welfare of an elder is endangered, and shall take any actions as are considered necessary to protect the elder and correct the situation and ensure the individual's safety.

As used in this chapter:

(a) "Elder" means a person 65 years of age or older.

(b) "Elder abuse" means any one or more of the following acts which are inflicted by other than accidental means on an elder by another person: physical abuse, fiduciary abuse, neglect, or abandonment.

(c) "Physical abuse" means a situation where any person who has the care or custody of, or who stands in a position of trust with, an elder, willfully inflicts upon that elder any cruel or inhuman corporal punishment or injury. Physical abuse includes, but is not limited to, direct beatings, sexual assault, unreasonable physical constraint, or prolonged deprivation of food or water.

(d) "Fiduciary abuse" means a situation where any person who stands in a position of trust with respect to an elder, willfully steals the money or property of that elder, or secretes or appropriates the money or property of that elder, to any use or purpose not in the due and lawful execution of his or her trust.

(e) "Neglect" means the negligent failure of any person having the care or custody of an elder to exercise that degree of care which a reasonable person in a like position would exercise. Neglect includes, but is not limited to:

(1) Failure to assist in personal hygiene, or in the

provision of food, and clothing for an elder.

(2) Failure to provide the medical care for the physical and mental health needs of an elder. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.

(3) Failure to protect an elder from health and safety hazards.

(4) Failure to prevent an elder from suffering malnutrition.

(f) "Abandonment" means the desertion or willful forsaking of an elder person by any person having the care or custody of that elder under circumstances in which a reasonable person would continue to provide care or custody.

(g) "Elder care custodian" means an administrator of a community care or health care facility licensed to care for the elderly, a public assistance worker, a probation officer, a social worker, a licensed home aide, or an employee of an elder care institution, including personnel of residential care facilities, skilled nursing facilities, and intermediate care facilities.

(h) "Medical practitioner" means a physician and surgeon, psychiatrist, psychologist, dentist, osteopath, podiatrist, chiropractor, resident, intern, nurse, pharmacist, or any other person who is currently licensed under Division 2 (commencing with Section 500) of the Business and Professions Code.

(i) "Nonmedical practitioner" means a state or county public health employee who treats an elder for any condition, a paramedic, a coroner, a geriatric or family counselor, or a lawyer.

(j) "Elder protective agency" means the State Department of Social Services, a county probation department, a county welfare department, a police or sheriff's department, or a nursing home ombudsman.

(k) "Adult protective services" means those preventive and remedial activities performed on behalf of elders who are unable to protect their own interests, harmed or threatened with harm, caused physical or

mental injury due to the action or inaction of another person or their own action due to ignorance, illiteracy, incompetence, or poor health, lacking in adequate food, shelter, or clothing, exploited of their income and resources, or deprived of entitlement due them.

SEC. 2. *Section 9383 of the Welfare and Institutions Code is amended to read:*

9383. (a) If a telephone report made pursuant to subdivision (a) of Section 9381 is received by an elder protective agency other than the appropriate law enforcement agency, the receiving agency shall relay the information to the law enforcement agency by telephone as soon as possible.

(b) *When an elder protective agency receives a report of abuse, neglect or abandonment of an elder or dependent adult who resides in a community care facility, that elder protective agency shall report the incident to the licensing agency by telephone as soon as possible.*

*(c)* An elder abuse victim may refuse or withdraw consent at any time to an investigation or the provision of protective services by an elder abuse agency. The agency shall act only with the consent of the victim unless a violation of the Penal Code has been alleged.

~~(c)~~

*(d)* If the elder abuse victim is so incapacitated that he or she cannot legally give or deny consent to protective services, a petition for temporary conservatorship or guardianship may be initiated in accordance with Section 2250 of the Probate Code.

*SEC. 3.* Section 9387 is added to the Welfare and Institutions Code, to read:

9387. The department, in cooperation with representatives of county government, and in consultation with the State Department of Education, the State Department of Developmental Services, and the Department of Justice, shall establish minimum guidelines for determining when investigation of an allegation of abuse is warranted.

The State Department of Social Services shall report to

the Joint Legislative Budget Committee by January 1, 1988, on the fiscal and programmatic impacts of these guidelines on county adult protective service agencies.

~~SEC. 3.~~

*SEC. 4.* Section 15600 of the Welfare and Institutions Code is amended to read:

15600. (a) The Legislature recognizes that dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect such persons.

(b) The Legislature further recognizes that a significant number of these persons are elderly. The Legislature desires to direct special attention to the needs and problems of the elderly, recognizing that these persons constitute a significant and identifiable segment of the population and that they are more subject to risks of abuse, neglect, and abandonment.

(c) The Legislature further recognizes that a significant number of these persons are developmentally disabled. Mental and verbal limitations often leave them vulnerable to abuse and incapable of asking for help and protection.

(d) Most elders and dependent adults who are at the greatest risk of abuse, neglect, and abandonment by their family or caretakers suffer physical impairments and other poor health that place them in a dependent and vulnerable position.

(e) Factors which contribute to abuse, neglect, and abandonment of elders and dependent adults are economic instability of the family, resentment of caretaker responsibilities, stress on the caretaker, and abuse by the caretaker of drugs or alcohol.

(f) The Legislature declares that this state shall foster and promote community services for the economic, social, and personal well-being of its citizens in order to protect those persons described in this section.

(g) Uniform state guidelines which specify when county adult protective service agencies are to investigate allegations of abuse to elders and dependent adults and the appropriate role of local law enforcement

do not currently exist and the implementation of these guidelines is necessary in order to ensure that a minimum level of protection is provided to elders and dependent adults in each county.

(b) Therefore, it is the intent of the Legislature in enacting this chapter to provide, in those instances where a county has designated an elder or dependent adult abuse reporting agency, that that agency shall receive referrals or complaints from public or private agencies, from any mandated reporter submitting reports pursuant to Section 9381, or from any other source having reasonable cause to know that the welfare of an elder or dependent adult is endangered, and shall take such actions as are considered necessary to protect the elder or dependent adult and correct the situation and ensure the individual's safety.

~~SEC. 4.~~

*SEC. 5.* Section 15602 of the Welfare and Institutions Code is amended to read:

15602. This chapter shall remain in effect only until January 1, 1990, and on that date is repealed unless a later enacted statute, which is chaptered before that date, deletes or extends that date.

~~SEC. 5. Section 15610 of the Welfare and Institutions Code is amended to read:~~

~~15610. As used in this chapter:~~

~~(1) The term "abuse" means the infliction of injury, intimidation, cruel punishment, mental limitations, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a care/giver of goods or services which are necessary to avoid physical harm or mental suffering.~~

~~(2) "Neglect" means the failure of any person having the care or custody of a dependent adult to exercise that degree of care which a reasonable person in a like position would exercise.~~

~~Neglect includes, but is not limited to:~~

~~(a) Failure to assist in personal hygiene, or in the provision of food and clothing for a dependent adult.~~

~~(b) Failure to provide the medical care for the~~

~~physical and mental health needs of a dependent adult. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.~~

~~(c) Failure to protect a dependent adult from health and safety hazards.~~

~~(d) Failure to prevent a dependent adult from suffering malnutrition.~~

~~(3) The term "abandonment" refers to the desertion or willful forsaking of a dependent adult by a caregiver.~~

~~(4) "Physical abuse" means a situation where any person who has the care or custody of, or who stands in a position of trust with, a dependent adult, willfully inflicts upon that dependent adult any cruel or inhuman corporal punishment or injury. Physical abuse includes, but is not limited to, direct beatings, sexual assault, unreasonable physical constraint, or prolonged deprivation of food or water.~~

~~(5) The term "mental suffering" means deliberately subjecting a person to fear, agitation, confusion, severe depression, or other forms of serious emotional distress, through threats, harassment, or other forms of intimidating behavior.~~

~~(6) The term "dependent adult" means any person residing in California who is between the ages of 18 and 64 who has physical, mental, or financial limitations which restrict his or her individual ability to carry out normal activities of daily living, ability to protect his or her own rights, and which threaten the individual's capacity to live an independent life.~~

~~(7) The term "goods or services which are necessary to avoid physical harm or mental suffering" includes but is not limited to: (a) the provision of medical care for physical and mental health needs, (b) assistance in personal hygiene, (c) possessing adequate clothing, (d) adequately heated and ventilated shelter, (e) protection from health and safety hazards, (f) protection from malnutrition, under those circumstances where the results include, but are not limited to, malnutrition and~~

~~deprivation of necessities or physical punishment, and (g) transportation and assistance necessary to secure any of the needs set forth in paragraphs (a) through (f). No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.~~

~~(8) The term "care/giver" means, any person, health facility, community care facility, clinic, home health agency or legal guardian or conservator who provides goods or services necessary to avoid physical harm, or mental suffering, and who performs duties.~~

~~(9) The term "nursing home ombudsman" means the long/term care ombudsman of the Department of Aging, the ombudsman coordinators of that department, and the persons acting in the capacity of regional ombudsman on behalf of approved organizations as described in Chapter 9 (commencing with Section 9700) of Division 8.5.~~

~~(10) The term "investigation" means that activity necessary to determine the validity of a report of elder or dependent adult abuse, neglect, or abandonment.~~

~~(11) The term "adult protective services" means those preventive and remedial activities performed on behalf of dependent individuals 18 years or older who are: unable to protect their own interests; harmed or threatened with harm; caused physical or mental injury due to the action or inaction of another person or their own action due to ignorance, illiteracy, incompetence, or poor health; lacking in adequate food, shelter, or clothing; exploited of their income and resources; or deprived of entitlement due them.~~

*SEC. 6. Section 15610 of the Welfare and Institutions Code is repealed.*

~~15610. As used in this chapter:~~

~~(1) The term "abuse" means the infliction of injury, intimidation, cruel punishment, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a care/giver of goods or services which are necessary to avoid physical harm or mental suffering.~~

~~(2) "Neglect" means the failure of any person having~~

~~the care or custody of a dependent adult to exercise that degree of care which a reasonable person in a like position would exercise.~~

~~Neglect includes, but is not limited to:~~

~~(a) Failure to assist in personal hygiene, or in the provision of food and clothing for a dependent adult.~~

~~(b) Failure to provide the medical care for the physical and mental health needs of a dependent adult. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.~~

~~(c) Failure to protect a dependent adult from health and safety hazards.~~

~~(d) Failure to prevent a dependent adult from suffering malnutrition.~~

~~(3) The term "abandonment" refers to the desertion or willful forsaking of a dependent adult by a caregiver.~~

~~(4) "Physical abuse" means a situation where any person who has the care or custody of, or who stands in a position of trust with, a dependent adult, willfully inflicts upon that dependent adult any cruel or inhuman corporal punishment or injury. Physical abuse includes, but is not limited to, direct beatings, sexual assault, unreasonable physical constraint, or prolonged deprivation of food or water.~~

~~(5) The term "mental suffering" means deliberately subjecting a person to fear, agitation, confusion, severe depression, or other forms of serious emotional distress, through threats, harassment, or other forms of intimidating behavior.~~

~~(6) The term "dependent adult" means any person residing in California who is between the ages of 18 and 64 who has physical, mental, or financial limitations which restrict his or her individual ability to carry out normal activities of daily living, ability to protect his or her own rights, and which threaten the individual's capacity to live an independent life.~~

~~(7) The term "goods or services which are necessary to avoid physical harm or mental suffering" includes but~~

~~is not limited to: (a) the provision of medical care for physical and mental health needs; (b) assistance in personal hygiene; (c) possessing adequate clothing; (d) adequately heated and ventilated shelter; (e) protection from health and safety hazards; (f) protection from malnutrition, under those circumstances where the results include, but are not limited to, malnutrition and deprivation of necessities or physical punishment; and (g) transportation and assistance necessary to secure any of the needs set forth in paragraphs (a) through (f). No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.~~

~~(8) The term "care/giver" means any person, health facility, community care facility, clinic, home health agency or legal guardian or conservator who provides goods or services necessary to avoid physical harm, or mental suffering, and who performs duties.~~

~~(9) The term "nursing home ombudsman" means the long/term care ombudsman of the Department of Aging, the ombudsman coordinators of that department, and the persons acting in the capacity of regional ombudsman on behalf of approved organizations as described in Chapter 9 (commencing with Section 9700) of Division 8.5.~~

*SEC. 7. Section 15610 is added to the Welfare and Institutions Code, to read:*

*15610. As used in this chapter:*

*(a) "Dependent adult" means any person residing in this state, between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age.*

*(b) "Physical abuse" means any of the following:*

*(1) Battery, as defined in Section 242 of the Penal Code.*

*(2) Unreasonable physical constraint, or prolonged or continual deprivation of food or water.*

(3) Sexual assault.

(c) "Sexual assault" means conduct in violation of one or more of the following sections:

(1) Sexual battery, as defined in Section 243.4 of the Penal Code.

(2) Rape, as defined in Section 261 of the Penal Code.

(3) Rape in concert, as defined in Section 264.1 of the Penal Code.

(4) Incest, as defined in Section 285 of the Penal Code.

(5) Sodomy, as defined in Section 286 of the Penal Code.

(6) Oral copulation, as defined in Section 288a of the Penal Code.

(7) Penetration of a genital or anal opening by a foreign object, as defined in Section 289 of the Penal Code.

(d) "Neglect" means the negligent failure of any person having the care or custody of a dependent adult to exercise that degree of care which a reasonable person in a like position would exercise. Neglect includes, but is not limited to all of the following:

(1) Failure to assist in personal hygiene, or in the provision of food or clothing.

(2) Failure to provide medical care for physical and mental health needs. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.

(3) Failure to protect from health and safety hazards.

(4) Failure to prevent malnutrition.

(e) "Abandonment" means the desertion or willful foresaking of a dependent adult by anyone having care or custody of that person under circumstances in which a reasonable person would continue to provide care and custody.

(f) "Fiduciary abuse" means a situation in which any person who has the care or custody of, or who stands in a position of trust to, a dependent adult, takes, secretes, or appropriates their money or property, to any use or purpose not in the due and lawful execution of his or her

*trust.*

*(g) "Abuse of a dependent adult" means physical abuse, sexual abuse, neglect, intimidation, cruel punishment, fiduciary abuse, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a care custodian of goods or services which are necessary to avoid physical harm or mental suffering.*

*(h) "Care custodian" means an administrator or an employee of any of the following public or private facilities:*

*(1) Health facility.*

*(2) Clinic.*

*(3) Home health agency.*

*(4) Educational institution.*

*(5) Sheltered workshop.*

*(6) Camp.*

*(7) Respite care facility.*

*(8) Residential care institution, including foster homes and group homes.*

*(9) Community care facility.*

*(10) Adult day care facility, including adult day health care facilities.*

*(11) Regional center for persons with developmental disabilities.*

*(12) Licensing worker or evaluator.*

*(13) Public assistance worker.*

*(14) Adult protective services agency.*

*(15) Patient's rights advocate.*

*(16) Nursing home ombudsman.*

*(17) Legal guardian or conservator.*

*(18) Skilled nursing facility.*

*(19) Intermediate care facility.*

*(20) Local law enforcement agency.*

*(21) Any other person who provides goods or services necessary to avoid physical harm or mental suffering and who performs duties.*

*(i) " Health practitioner" means a physician and surgeon, psychiatrist, psychologist, dentist, resident, intern, podiatrist, chiropractor, licensed nurse, dental*

*hygienist, marriage, family, and child counselor, or any other person who is currently licensed under Division 2 (commencing with Section 500) of the Business and Professions Code, any emergency medical technician I or II, paramedic, a person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code, a psychological assistant registered pursuant to Section 2913 of the Business and Professions Code, a a marriage, family and child counselor trainee, as defined in subdivision (c) of Section 4980.03 of the Business and Professions Code, or an unlicensed marriage, family and child counselor intern registered under Section 4980.44 of the Business and Professions Code, state or county public health or social service employee who treats a dependent adult for any condition, a coroner, or a religious practitioner who diagnoses, examines or treats dependent adults.*

*(j) "Adult protective services agency" means a county welfare or social services department.*

*(k) "Adult protective services" means those preventive and remedial activities performed on behalf of dependent adults who are unable to protect their own interests; harmed or threatened with harm; caused physical or mental injury due to the action or inaction of another person or their own action due to ignorance, illiteracy, incompetence, mental limitation or poor health; lacking in adequate food, shelter, or clothing; exploited of their income and resources; or deprived of entitlement due them.*

*(l) "Goods and services which are necessary to avoid physical harm or mental suffering" include, but are not limited to, all of the following:*

*(1) The provision of medical care for physical and mental health needs.*

*(2) Assistance in personal hygiene.*

*(3) Possessing adequate clothing.*

*(4) Adequately heated and ventilated shelter.*

*(5) Protection from health and safety hazards.*

*(6) Protection from malnutrition, under those circumstances where the results include, but are not*

BLANK PAGE

Artifact of Photocopy Reproduction

JAN RAYMOND
LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
1 (888) 676-1947

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, California 90071. On June 11, 2008, I served the following document(s) by the method indicated below:

**DEFENDANT MORTGAGEIT, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLIANT**

- [x] by E-Filing (ecf.casd.uscourts.gov)
- [ ] by transmitting via facsimile on this date from fax number 213.457.8080 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error.
- [ ] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.
- [ ] by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.
- [ ] by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

**"SEE ATTACHED SERVICE LIST"**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on June 11, 2008, at Los Angeles, California.

/s/ Mary Hong
Mary Hong

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

## "SERVICE LIST"

*Susan Jette and Barbara Anne Jette v. Orange County Financial, Inc., et al.*

Southern District Case No. 08 CV 0616-DMS-LSP

[Hon. Dana M. Sabraw]

| | |
|---|---|
| Jeremy S. Golden, Esq.<br>LAW OFFICES OF ERIC F. FAGAN<br>2300 Boswell Road, Suite 211<br>Chula Vista, CA 91414 | **Attorneys for Plaintiff Susan Jette and Barbara Ann Jette**<br>T: 619.656.6656<br>F: 775.898.5471<br>E-Mail: Jeremy@efaganlaw.com |
| M. Alim Malik<br>James H. Millane<br>JACKSON, DEMARCO, TIDUS, PETERSON, PECKENPAUGH<br>2030 Main Street, Suite 1200<br>Irvine, CA 92614 | **Attorneys for Defendant Orange County Financial, Inc. and Jeremy Indes**<br>T: 949.752.8585<br>E-Mail: amalik@jdtplaw.com and jmillane@jdtplaw.com |
| Steven Ray Garcia<br>Greta T. Hutton<br>KNAPP PETERSON & CLARKE<br>500 North Brand Boulevard<br>20th Floor<br>Glendale, CA 91203-1904 | **Attorneys for Defendant Tiempo Escrow, Inc.**<br>T: 818.547.5000<br>F: 818.547.5329<br>E-Mail: srg@kpclegal.com and gh@kpclegal.com |
| Michael R. Farrell<br>Yale E. Kim<br>Bradley E. Jewett<br>ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP<br>515 S. Figueroa Street, Ninth Floor<br>Los Angeles, CA 90071-3309 | **Attorneys for Defendant Indymac Bank, F.S.B.**<br>T: 213.622.5555<br>F: 213.620.8816<br>E-Mail: mfarrell@allenmatkins.com, ykim@allenmatkins.com and bjewett@allenmatkins.com |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.