Jeremy S. Golden (SBN 228007)
LAW OFFICES OF ERIC F. FAGAN
2300 Boswell Road, Suite 211
Chula Vista, CA 91914
Jeremy@efaganlaw.com
Phone: 619-656-6656 Fax: 775-898-5471
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSAN JETTE and BARBARA ANN JETTE, individuals,<br><br>Plaintiffs<br><br>v.<br><br>ORANGE COUNTY FINANCIAL, INC., et al.<br><br>Defendants. | Case No.: 08CV0616-DMS-LSP<br><br>**Plaintiffs' Opposition to Defendant's Motion To Dismiss And In The Alternative, Motion For A More Definite Statement**<br><br>Date: July 25, 2008<br>Time: 1:30 p.m.<br>Dept.: 10<br><br>The Hon. Dana M. Sabraw |

## I.
## INTRODUCTION

Through a combination of false statements and predatory loan tactics, Defendants coerced Plaintiffs Barbara and Susan Jette to opt out of their 30-year-fixed-rate loan at a 5.625% interest rate into a negatively-amortizing adjustable-rate mortgage ("the Loan"). Defendants illegal scheme involved falsely stating that the interest rate would be lower than it actually was; supplying fraudulent Truth-In-Lending ("TILA") disclosures; falsifying a

loan application; and pressuring 74-year-old Barbara to close the loan transaction one day after she was released from the hospital.

## II.

## STATEMENT OF FACTS

Plaintiff Susan Jette is a 50-year old woman; Plaintiff Barbara Jette is her 74-year-old mother. Complaint, ¶14. In 2003, Plaintiffs bought their home located at 1347 7th St. in Oroville, CA, financing it with a 30-year fixed-rate loan at 5.625% interest per annum with Countrywide; this was Susan's first home purchase. Complaint, ¶15. In 2006, Barbara's health declined. Susan quit her job to give her mother full-time care. Complaint, ¶16.

In or around June 2006, Defendant Mingus induced the Plaintiffs to apply to refinance their home and took a loan application over the phone. Complaint, ¶22. The Loan originated with Defendant MortgageIT and MortgageIT has vicarious liability for the actions and inactions of Mingus. MortgageIT contributed to or participated in, or authorized the acts or conspired with the named Defendants to commit the acts and do the things complained of which caused the injuries and damages to Plaintiffs. Complaint, ¶13. Mingus falsely stated that the Loan would bear an interest rate between 1 and 3 percent of the first three to five years. Complaint, ¶24.

In actuality, the loan into which Orange County Financial ultimately arranged to be placed on the Plaintiffs' home escalated from 1.25% to 8.5% on November 1, 2006, less than one month after the Plaintiffs made their first loan payment. Complaint, ¶26. In making the subject loan, Defendants failed to consider the Plaintiffs' ability to repay the loan according to its terms. Complaint, ¶28. In fact, the Defendants falsified a loan application showing Susan having income of $2,200 a month; Susan had been unemployed since May 2006 and is still unemployed to enable her to act as her mother's caregiver. Complaint, ¶29.

Defendants further submitted to the Plaintiffs a Good Faith Estimate dated July 25, 2006, showing a loan interest rate of 1.25% and 480 virtually equal monthly payments. An amendment to the escrow instructions on August 31, 2006, confirmed the payment schedule and a note interest rate of 1.25%. Complaint, ¶30.

On or about August 31, 2006, Defendant Tiempo sent a notary to the Plaintiffs' home at approximately 6 p.m. to sign final documents to close the loan escrow; Susan had taken her mother home from the hospital the day prior. Complaint, ¶31. During the signing of loan documents for closing Barbara was unable to concentrate and kept falling asleep. Complaint, ¶32. The notary persisted and presented the Plaintiffs with 170 pages of documentation to review and sign, and rushed the Plaintiffs through the process. Complaint, ¶33.

***The First TILA Violation***

To support the Defendants' false claims, the Defendants submitted to the Plaintiffs in the closing documents a TILA disclosure statement dated July 25, 2006 showing an Annual Percentage Rate (APR) of 1.425% with 479 payments of $602.20 and a final payment of $600.41. Complaint, ¶27; and Golden Declaration, Exhibit A. The disclosed Finance Charge was $68,294. Complaint, ¶27; and Golden Declaration Exhibit A. Defendants placed this TILA disclosure towards the top of the closing documents.

***The Second TILA Violation***

Hidden farther down the pile of the closing documents was another TILA disclosure statement dated August 31, 2006 with an APR of 8.397%, a drastically revised payment schedule, and a total finance charge of $638,044.04. Complaint, ¶34; and Golden Declaration, Exhibit B. Moreover the TILA Disclosure was deceptive in that it stated that after 34 months the loan would go to full amortization with a payment of $1,878.57. Complaint, ¶35. The TILA disclosure further stated, "The payment schedule and annual percentage rate disclosed here are estimated assuming that the current index rate will not increase nor decrease throughout the loan term." Complaint, ¶36.

By using the payment schedule that Defendants outlined, the principal balance will increase at the rate of 7.25% (the note rate of 8.5% minus the payment rate of 1.25%) the first year, 7.156% the second year, and 7.062% the final ten months before the rate changes to full amortization. Complaint, ¶37.

The terms of the Loan provide that the "unpaid principal can never exceed the Maximum Limit equal to 115% of the principal amount I originally borrowed."

Complaint, ¶38. The original loan balance was $227,000. The interest rate was 8.5% or $19,295 the first year. Plaintiffs made 12 payments of $601.20 or $7214, leaving $12,081 that added to the principal balance. In year two, the new principal balance of $239,081 would have produced $20,322 of interest. Plaintiffs payments in year two were $646.29 a month, or $7755 of that amount, leaving another $12,567 added to the principal ($20,322 minus $7,755). Thus the principal balance by the end of year two would have been $251,648.

The interest payments on $251,648 for eight months equals $14260; eight payments by the Plaintiffs of 694.76 a month or $5,558 leave another $8702 added to the balance, which at this point has reached $260,350. These calculations are stated in a table format attached to the Golden Declaration.

In other words, in the first thirty-three months the balance on the Loan will reach 115% of the amount loaned. Thus, the payments will then jump automatically to a fully amortized payment pursuant to the terms of the Note.

As the payments are therefore erroneous, the TIL disclosures are inaccurate on the face of the documents. Complaint, ¶40. The loan escrow closed on September 12, 2006; Plaintiffs had unknowingly acquired a negatively amortizing Adjustable Rate Mortgage at a beginning rate of 8.5% due to go to a full amortization in less than three years, and with a prepayment penalty of at least $15,000. Complaint, ¶42.

The Plaintiffs made their first payment in October, 2006. Complaint, ¶46. In November, the Plaintiffs received notice that their interest rate would increase to 8.5%. They reviewed their documents and found the late TILA Disclosure and an unsigned copy of the falsified loan application. Complaint, ¶47.

As a result to the acts above, Plaintiff suffered depression, tensions, nervousness, fear, worry, unhappiness, sleeplessness, nightmares, loss of appetite, loss of enjoyment of life, humiliation, and severe emotional distress. Complaint, ¶54.

Plaintiffs filed this complaint against six named Defendants for violations of TILA and related state law causes of action on April 3, 2008 in the Southern District of California.

MortgageIT filed this motion to dismiss Plaintiff's complaint and, in the alternative, for a more definite statement.

## III.
## ISSUES

### A. Whether Plaintiffs Have Properly Alleged A Violation Of TILA.

MortgageIT submitted two separate TILA statements to Plaintiffs. Plaintiffs alleged that neither statement accurately disclosed the terms of the Loan.

### B. Whether Plaintiffs Have Properly Alleged State Law Causes Of Action Against MortgageIT.

Plaintiffs alleged that MortgageIT is directly or vicariously liable for Fraud and Conspiracy to Defraud; Violation of Business and Professions Code §17200; Breach of Fiduciary Duty and Elder Abuse.

## IV.
## STANDARD OF REVIEW

A court should grant a motion to dismiss only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Cooper v. Parsky (2d Cir. 1998) 140 F.3d 433, 440. As a general rule, courts do not favor motions to dismiss because of failure to state claim upon which relief can be granted, and a court should only grant such a motion sparingly and with caution only where it appears to a certainty that no set of facts could be proven at trial which would entitle plaintiff to any relief. Dann v Studebaker-Packard Corp. (6th Cir. 1961) 288 F.2d 201. A court is to view a motion to dismiss for failure to state a claim with disfavor as final disposition of civil actions on the basis of bare bones pleadings is a tortuous thing, this simple standard is apparently often overlooked. Arthur H. Richland Co. v Harper (5th Cir. 1962) 302 F.2d 324.

//

//

//

//

## V.
## ARGUMENT

### A. Defendants Violated TILA.

No entity provided any TILA disclosures to the Plaintiffs prior to the day of the closing of the Loan. MortgageIT submitted two separate false TILA disclosures to the Plaintiffs **in the closing documents** on the day the Loan closed. The first disclosure was dated July 25, 2006, and showed an APR of 1.425% with 479 payments of $602.20 and a final payment of $600.41. The disclosed finance charge was $68,294. The second contained a payment plan that will automatically result in a higher APR, finance charge and total of payments.

MortgageIT argues that Plaintiffs claims are based on speculation. However, the first disclosure is patently false on its face and no inferences or calculations need to be made to ascertain its falsity. TILA mandates that MortgageIT disclose all material information correctly, clearly and conspicuously. 15 U.S.C. §1632(a); and Reg. Z § 226.17(a). MortgageIT violated this requirement.

The second false disclosure is apparent after conducting a few calculations. Plaintiffs alleged that in this disclosure the APR, Finance Charge and Total of Payments are each understated. Complaint, ¶40. On a motion to dismiss the court must draw all inferences in favor of plaintiff. Thomas v. City of New York (2d Cir. 1998) 143 F.3d 31, 37. Thus, the second disclosure must be construed to be false.

Finally, if a disclosure is capable of more than one plausible interpretation, it is not "clear." Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006). Here, conflicting disclosures certainly are capable of more than one plausible interpretation. Additional written information that contradicts a TILA disclosure violates the clear and conspicuousness standard. Jenkins v. Landmark Mortgage Corp., 696 F.Supp. 1089 (W.D. Va. 1988); and Smith v. The Cash Store Mgmt., Inc., 195 F.3d 325 (7th Cir. 1999) (holding that the disclosure of two different amounts within the federal box, each denominated as the finance charge, is a violation).

//

**B. Plaintiffs Properly Pled Their State-law Causes Of Action.**

In Wyatt v. Union Mortgage Co., 24 Cal.3d 773 (1979), plaintiffs brought an action against a mortgage loan broker and its affiliated corporations for breach of duties owed to plaintiffs during the negotiations of a second mortgage loan. Similar to the present case, the defendants in Wyatt misrepresented the terms of the loan, including the interest, the amount of the loan payment and failed to call plaintiff's attention to unfavorable provisions buried in the loan papers. A jury rendered a verdict against defendants and the California Supreme Court affirmed. The California Supreme Court's decision in Wyatt is applicable to Plaintiff's state law claims.

1. Plaintiffs Properly Pled A Cause Of Action For Fraud And Conspiracy To Defraud.

MortgageIT's motion did not address paragraph 13 of the Complaint which states, "Defendants are all entities or individuals who contributed to or participated in, or authorized the acts or conspired with the named Defendants to commit the acts and do the things complained of…" This allegation must be accepted to be true. Zinermon v. Burch (1990) 494 U.S. 113, 118. "The existence of an agency is a factual questions within the province of the trier of fact." L. Byron Culver & Assoc. v. Jaoudi Industrial & Trading Corp., 1 Cal.App.4th 300, 305 (1991).

Therefore, at this stage in the proceedings, MortgageIT must be assumed to be liable for the conduct of its agents – Defendants OCFI, Tiempo, Indes and Mingus. Plaintiffs specifically alleged all events surrounding the fraud including the dates of the false statements (Complaint ¶¶ 22, 27, 29, 30, and 34), the place of the false statements (Complaint ¶¶ 22, and 31) and the specific content of the false statements (Complaint ¶¶ 17, 24, 27, 30, 33, 34, 35, 36, and 40).

Fraud requires (1) a knowingly false representation by the defendants, (2) an intent to deceive or induce reliance, (3) justifiable reliance by the plaintiff; and (4) resulting damages. Service by Medallion, Inc. v. Clorox Co., 44 Cal.App.4th 1807, 186 (1996). Plaintiffs alleged each of these factors as to MortgageIT.

Moreover, as long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on all of them, regardless of whether they actually commit the tort themselves. Wyatt at 784. Finally, MortgageIT knew or should have known that the stated income was falsified.

2. Plaintiff's Properly Pled A Claim for Violation Of The Business And Professions Code §17200.

Business & Professions Code §17200 states, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…" Plaintiffs have properly alleged violations of TILA, Reg. Z, fraud, conspiracy to defraud, breach of fiduciary duty, and violation of the Elder Abuse Act. Each one of these violations can support a violation of §17200. Farmers Ins. Exch. v. Super. Ct., 2 Cal.4th 377, 383 (1992).

3. MortgageIT owed Plaintiffs A Fiduciary Duty

"A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." In Wyatt, *supra*, the California Supreme Court stated that under general principals of agency and statutory real estate law, a fiduciary relationship exists between a real estate loan broker and the borrower. *See* Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 784 (1979) (holding that a broker's failure to orally disclose actual interest rate, late prepayment penalty, and correct amount of balloon payment was breach of fiduciary duty).

Under the reasoning in Wyatt, a lender could become liable along with the loan broker if the lender or its authorized agents "directly ordered, authorized or participated in" the broker's tortious conduct. Wyatt, at 785.

Furthermore, in Barrett v. Bank of America, 183 Cal.App.3d 1362 (1986) the court held that a lender may create a fiduciary relationship when a party undertakes the role of a confident or adviser. At this stage it is too early to tell whether the actions by MortgageIT served to create a fiduciary duty, but it cannot be said that Plaintiffs have failed to state a claim. In fact, there are ample facts alleged regarding the uniquely vulnerable position of the Plaintiffs where a fiduciary duty may have been created. *See also* Commercial Cotton Co. v.

United Cal. Bank, 163 Cal.App.3d 511 (1985) (holding that bank had breached a quasi-fiduciary obligation to a *depositor*, who was not even a borrower or a guarantor).

4. Defendants Violated The Elder Abuse Act

Welfare and Institutions Code section 15610.07 provides in pertinent part: "Abuse of an elder or dependent adult" means either of the following: (a) Physical abuse, neglect, **financial abuse**…"

Welfare and Institutions Code section 15610.30 provides:

> (a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following:
>
> > (1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.
> > (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or a dependent adult to a wrongful use or with intent to defraud, or both.

MortgageIT argues that "WIC §1516.30 has never been interpreted by a California appellate court in a published decision, and legislative history provides no relative guidance." Defendant's Motion, p.15:1-3. MortgageIT failed to acknowledge the published federal court decision on point.

In Negrete v. Fidelity and Guar. Life Ins. Co., 444 F.Supp.2d 998 (C.D.Cal. 2006) the court denied defendant's motion to dismiss a claim for WIC §1516.30 (allegation that insurer engaged in deceptive practices to deplete accumulated cash value of senior citizens' existing life insurance policies was sufficient to state claim for violation of Elder Abuse Act).

The defendants in Negrete made the identical arguments that MortgageIT is now making, i.e., that MortgageIT did not "take," "secrete," "appropriate," or wrongfully "retain" Plaintiff's funds. The court rejected that argument and stated that plaintiff's allegations that defendants deceived seniors to increase deferred annuity sales was "more than adequate to establish the direct or assisted 'taking' of personal property to state a claim for violation of California's Financial Elder Abuse Laws." Negrete at 1002. Here, MortgageIT's fraud, deception and stratagem as alleged is more than enough to state a claim for a wrongful taking

and retention of an interest in Plaintiff's real property.

**C. If The Court Grants MortgageIT's Motion Plaintiffs Request Leave To Amend**

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. Proc. 15(a); and Negrete, at 1001. If this court grants MortgageIT's motion or any part of it, Plaintiffs request leave to amend.

**VI.**

**CONCLUSION**

It is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1982). This case does not present such a circumstances. Plaintiffs have alleged five cognizable claims for relief and factual support for each claim. MortgageIT's motion should be denied in its entirety.

Date: July 7, 2008

s/ Jeremy S. Golden
Jeremy S. Golden
Attorney for Plaintiff